Good morning, your honor. My name is Mark Dessauer. I represent Fiber Innovation Technologies, which is both appellant and a cross-appellee in the case, and I would like to reserve two minutes for rebuttal. This case was tried in the district court, and it's on appeal from that trial. There are three issues raised in the briefs, and in my argument I will try to cover those three issues, but in the event that I do not, I would reserve the arguments in the briefs, because I think the briefs thoroughly address the issues. Unfortunately, this case raises primarily commercial law issues. It doesn't involve drugs or violence or sex, as you saw in the earlier cases, but we do believe this case presents important issues of commercial law that this court should decide. It seems to me that there are four overriding considerations that I would like the court to consider in evaluating our position on appeal as it relates to the issues in this case. The first is the rule or the principle that an express contract and an applied contract are mutually exclusive. That is, you cannot have an express contract and an applied contract at the same time that covers the same subject matter, and I think that's important here because as the district court analyzed this case, he seemed to let those two concepts be overlapped in his analysis. The second thing I would say is that— That's what the law of Tennessee is? Yes, sir. And that's what we're dealing with, Tennessee state law? You're dealing with Tennessee law. What's your best case for that principle of law you just cited? My best case is the—it's a Sixth Circuit case that's cited. Applying Tennessee law? It applies Ohio law, but the principles are— Okay, well, that's a little different, isn't it? Well, no, because the principles are the same in Tennessee. They may or may not be, that's all.  It's clear that before you can have an implied in law contract, there can be no express contract. In other words, the concepts cannot be overlapped from the principles that form the basis of the causes of action. Excuse me, I'm sorry. Do you have an express contract if it's barred by the statute of frauds? If it's not a valid contract then, so why couldn't you have an implied contract? That's a good question. The answer would be the statute of frauds is really viewed as a defense to the contract. And if you look at the district court's analysis of the case, it presumed a valid contract existed and that statute of frauds was a defense to the contract. However, if you look at the cases in Tennessee, they talk about the fact that even though there is a statute of frauds defense to the contract, in order for the court to enforce the contract, the other elements of an express contract have to be met, such as offer acceptance and consideration of mutual assent. So that's a yes or no answer to that question. In this case, But it would have, you know, there are lots of, you know, we're talking equity now when you talk about unjust enrichment or something like that or an implied contract. But, you know, there are other cases that just say partial performance would be enough to take it out of the statute of frauds. Yes, and those issues aren't on appeal here. I understand that, but we're, you know, all of those things would go, though, as to whether we have an express contract. Well, yes. Again, the analysis, I think, is this, Your Honor, is that are the elements of an express contract established? That, to me, would be the first test. Then is the statute of frauds a defense? And if the answer to that is yes, then the court is to look further to see whether there are exceptions to the statute of frauds, which would permit its non-applicability under the facts of that case, one of which would be partial performance. Or, as was alleged at trial, but it's not on an appeal, would be whether promissory estoppel would act as an exception to the application of the statute of frauds as a defense. And the other principle that seems important here that I wanted to emphasize was this concept of quasi-contract. And a quasi-contract can be one of two types. It can be an implied-in-fact contract, which is really no different from an express contract in that you have to have mutual assent to the terms and there's consideration, and then there's an implied-in-law contract, which was at issue here. And then there's this concept of quantum merrit that gets used interchangeably with unjust enrichment. And really when you try to separate these concepts, unfortunately our courts have said that they're used interchangeably and that they mean the same thing. But they really don't mean the same thing if you really look at them, because what quantum merrit means is as much as is deserved. And what unjust enrichment is, it's really nothing more than a legal fiction that's been created by the courts to remedy a situation that the courts determine are inequitable or unjust. So the quantum merrit is, in effect, the compensation or the award for unjust enrichment. So I think that factor is important here in analyzing the case itself. The other thing that I would say is that there's a lot of talk in the briefs about... What's your issue of error here? I mean, interesting discussion, but how did the district court err in applying Tennessee law? What's the error? There's two errors, three errors that the court made in applying Tennessee law with respect to the claim of unjust enrichment. That's the issue that they award. There were three errors that the district court made. The first error was the application of the wrong legal test under the facts of this case. And as we've set out in our brief, there are different lines of Tennessee cases, Supreme Court cases, which talk about unjust enrichment and the factors that are needed to establish those. The first line of cases has a three-part test. Okay, so you admit that an unjust enrichment is a viable cause of action? Yes. Okay, but the elements haven't been satisfied. The elements have not been satisfied. What was all that discussion before about? Well, I think... What was your all-leading about? Well, I think in order, what I'm saying is I think that the district court, I don't want this court to make the same error I believe the district court made was to allow these concepts to be overlapping. I think they have to be viewed independently, and that's the point I was making. What overlaps? Excuse me, Judge Griffin, I'm sorry. Well, what the court overlapped in this case was primarily is the measure of damages. All right, so the district court found an express contract? No, the district court, well, the district court seemed to find... The district court found an express contract not unenforceable under the statute of frauds. Is that correct? No, the district court found that there was an express contract that was not enforceable under the statute of frauds. The contract fell within the statute of frauds, so it was unenforceable as an express contract. The district court then found that the plaintiff could recover under the doctrine of unjust enrichment, and what we say is the district court erred in its application of the remedy or the measure of damages for unjust enrichment because the cases in our state are clear that the measure of damages for unjust enrichment is the reasonable value of the goods and services under the prevailing standards in the industry. That's the measure of damages. And what the district court used in computing damages was the contract price. And so the district court took that contract price as the measure of damages. And the cases we've cited in our brief are clear that the contract price cannot be used as a measure of damages in calculating the award for unjust enrichment. Unless it reflects what the ordinary cost is. No. No, I don't, unless there's unequivocal evidence that that is the case. Well, wouldn't you have to show that it conflicts? Well, I think you have to. In the cases show this, you put on testimony that would say what is the reasonable value of this case. Well, but you'd prove that by the contract, by the terms of the contract, because you have a willing buyer, a willing seller, and so you prove that by the contract. You say it should be something else, and then you would have to move forward with why that doesn't work. No, I would respectfully disagree because the burden was always on the plaintiff. But they meet the burden by showing this is the contract, is what a willing buyer and willing payer would be willing to do at this time and place. Typically that might be evidence of what the award would be. That's all they have to put in is evidence. No, no, because the cases say that the damages have to be proved by the reasonable value of the goods and services. But how do you prove the reasonable value, but by evidence? Well, you put on other evidence that would establish. Why do you have to put on other evidence? If they ask me what the value of my house is and I just bought it and I say it's not worth what I paid for, I can't say that. The market value was established when I bought it. Yeah, but if you sold your house and you didn't have an enforceable contract, the market value may not determine what the value was. There would be other evidence as to what the reasonable value of that house might be. Well, it's pretty good evidence when the buyer and seller agree on the amount. Now, you can come forward, the other side can come forward and say nobody would ever pay that, and this is what the industry would pay. I guess you could do that and then it would be up to trier effect to determine which of those things. But the problem with that argument is it goes directly into the face of the well-established law, No, it doesn't. Maybe I'm not being artful enough, but I think the difference we're having is how do you establish that market value? I say you can establish it through what the parties agreed, and you say you can't. I think that's the difference. I think that's the fundamental issue. And the other thing in this case was the Do you have a case that says you can't? You can't, that that doesn't make at least the first trial? Yes, there's a legion of cases that say the contract price Give me the best case you have. The best case I have is ICG Link, Inc., V. Steen, 363 Southwest 3rd, 533. And that case is a good case because in that case the contract involved the construction of a website for a company. And the court found there was no enforceable contract. But the trial court awarded damages based on the original quote in the invoice that the web design company gave to the defendant. And the court of appeals, when it looked at it, it said no. Well, a quote would mean the same thing. Here they agreed. A quote, the other side didn't agree. Well, they did agree because they accepted the work. They did agree. They did agree because they accepted the work. It's just they had an unenforceable contract. So they did agree to the court. The case you cited, though, I was talking about, you said it was a quote that they gave. It was a quote that they gave that was accepted by the party, that accepted the benefit of the bargain of the website. So the court of appeals then looked at it and said that's not the measure of damages. You've got to determine what the value of the improvement, the creation of the website was based on other evidence. And that's the point of what I'm arguing here. Thank you. Any further questions at this point? Did you reserve time for rebuttal? I didn't write it down. Two minutes. Two minutes, very good. You'll have your two minutes. Good morning. Good morning. May it please the court, Chris Thorsen on behalf of F.F. Smith, the appellee and cross-appellant. I'm going to rely on my brief for most of the arguments here, but I do want to address a couple of quick things that was discussed in the opening argument. And first I want to go right to this point about damages and what proof in the record there was of damages. Number one, we don't disagree about the measure of damages being the reasonable value of goods and services as determined by the standards and practices, customs and practices prevailing in the industry. That's the test. And that's the exact test that the district court applied in analyzing whether we had proven damages at trial. So there's no legal error with regard to which test was applied. Factually, there are ample facts in the record regarding reasonable value of the services provided by F.L. Smith. And those services are F.L. Smith, as was the standard in the industry, would agree to specify FIT PPS fiber for use in its big industrial air filtration bags so long as FIT provided a rebate. So F.L. Smith is in charge of, when it fills out a purchase order, of specifying whose product it needs to be used in their bags. And the standard in the industry, and Mr. Hodge for FIT admitted that everybody told him it was the standard in the industry. If he wanted to get in, he was going to have to offer a rebate. And so they had a meeting. The testimony was that on October 24, 2007, Mr. Hodge contacted my client's president of the division and said, we'll provide you guys a rebate at 57 cents per pound of fiber that you specify. He agreed to that, and he also testified that he thought he had an agreement. So, and we presented a lot of evidence at trial regarding the reasonable value. Even if you ignore the contract price, the contract price is evidence of the reasonable value. Mr. Hodge admitted that he agreed to it in 2007. He also agreed to it again in a written contract for 2010 and 2011 after the period that we're talking about here. So on two occasions, FIT agreed that 57 cents per pound was a reasonable price in the industry. You agree that the contract could have been performed in one year? Yes, Your Honor. Okay. It's a contract for an indefinite period. And really, honestly, the next day, F.L. Smith could have specified FIT PPS fiber, and then never again. And the rebate would have been due, and the contract would have been fully performed. And there's case law that we cited in our brief that says that contracts for an indefinite period are not subject to the statute of frauds because they are capable of performance within one year. And that's the law in Tennessee? That's the law in Tennessee, yes, Your Honor. What do we do with your cross appeal? Which remedy are you asking for, the affirmance of the unjust enrichment judgment or the cross appeal which would go for the express contract? I mean, you do it either or, but what's your preference? Just to affirm, Your Honor, there's no difference between the remedy. In this case, because the district court used 57 cents a pound, we would not receive any additional remedies under our express contract claim. So if this court affirms, it need not even address the statute of frauds issue. That's what you request us to do? Yes, Your Honor. Yes, Your Honor. And the cross appeal is a complete alternative. Are you saying we don't have to get to the unjust enrichment stuff? Well, the unjust enrichment, the judgment was in our favor on the unjust enrichment claim. So if you affirm that, we're happy. Okay. I'm not expecting you to walk away from something you've already won, but your better argument was it not that this was not covered by the statute of frauds? Well, I do believe that is a good argument. All right. And so the terms of the contract are the real bellwether for assessing damages? That's correct, Your Honor. Okay. That's correct, Your Honor. That's your strongest hold? That's my strongest hold. But I know it's easier for this court probably to affirm, and so that's the avenue that I want to talk about today. The damage is the same? The damages are the same under either theory, Your Honor, yes. Okay. Yes. In terms of the total amount of fiber specified, there's not a dispute about that. In the record, it's 556,062 pounds of fiber that we specified in our purchase orders. And so let me just make sure that I cover the evidence in the record in addition to the contract price that supports the damages awarded by the district court on the unjust enrichment claim. Because you're right, on the breach of contract claim, that's easy. It's what the parties agreed to. But in addition to the 57 cents agreement twice by FIT, there was also evidence in the record that within the industry, FIT had a corresponding rebate with its raw materials supplier for the raw materials to be used in this fiber at 57 cents a pound. FIT had a rebate agreement in place during the same period with my client's biggest competitor, Midwestco, for 64 cents a pound. And so that evidence was undisputed. We introduced the Midwestco agreement that it had with FIT. And then further, FIT, in turn, when it sold the fiber to Southern Felt, the felt manufacturer, it charged $6.40 a pound. And so for the 556,062 pounds, FIT received $3.559 million in orders and cash in exchange for providing that fiber. And so that evidence is further evidence of the value of 57 cents a pound. So there's no legal error. The court applied the correct test, and the court's findings with regard to damages are plausible in light of the entire record. With regard to the application of unjust enrichment where there's an unenforceable contract, the cases are very clear that if you had a contract that's unenforceable for any reason, whether it's against public policy, doesn't comply with the statute of frauds, whatever the reason, you can still recover under unjust enrichment. That's the law of Tennessee. That's the law of Tennessee, and that is clear. That's clear by the Swofford case that Mr. Dessauer cites as the test that should be applied. And let me say one more thing regarding the five-part test versus the three-part test set forth in the briefs. Number one, the district court applied the correct test. The district court cited Freeman Industries, which is a Tennessee Supreme Court case, in 2005. And Freeman Industries, that case in 2005, the parties, the plaintiff, proceeded on an unjust enrichment claim specifically. Not any other of the quantum merit theories that are out there. It was an unjust enrichment claim. And the Tennessee Supreme Court in 2005 said that in Tennessee you use a three-part test in determining whether a plaintiff can recover for unjust enrichment. Number one, is there a benefit conferred on the defendant by the plaintiff? Number two, did the defendant appreciate that benefit? And number three, would acceptance of that benefit by the defendant under circumstances where it is inequitable for the defendant to retain the benefit without paying the plaintiff? And if the answer to that is yes, then the plaintiff is entitled to an unjust enrichment judgment. Now, the differences between the two tests, between Swofford, which is the test that FIT wants the court to apply, there really are no differences. Swofford has a five-part test. Freeman Industries has a three-part test. And maybe this case is no longer viable, but I have Whitehaven Community Baptist Church against Holloway. Correct. It says one of the underlying requirements for stating an unjust enrichment claim is that there is no valid and enforceable contract between the parties. That is correct. So that's a prerequisite to the unjust enrichment test. So it really is an element to unjust enrichment, because you can't have one of the elements. The first element in Swofford, the five-part test, is that there's not an enforceable contract. And in the three-part test in Freeman Industries and Whitehaven, that's a prerequisite to even applying the unjust enrichment. So that's essentially the first element, the unnumbered first element in the unjust enrichment test. So there's no differences between the tests at all. And the district court was correct in applying the Freeman Industries test, which is 2005. The Wofford test cited by FIT was a 1998 case dealing with quantum merit generally, and Freeman Industries was specific to unjust enrichment, which was the exact specific claim that we proceeded with in the alternative in the event the breach of contract claim was unenforceable as a result of the statute of frauds. So unless your honors have any other questions, we'll submit on the briefs. We have none. Thank you, counsel. Thank you. Rebuttal. Rebuttal. With respect to the issue of damages at trial, during the course of when I deposed the F.L. Smith's president, I asked him that question about what were other people paying him in rebates, and he refused to give me that information. He said it was confidential. So when we got to trial, the plaintiff tried to prove that information, and I objected and said, you know, judge, I'm being, you know, they can't prove their damages with evidence that they refused to disclose in discovery, and the judge sustained that objection. He didn't allow their evidence of what the custom and practice in the industry would be to prove those element of damages. So that was excluded by the district court. So that's another reason why the burden of proof on damages wasn't made. The Freeman Industries case is distinguishable from the other cases because that line of cases involves circumstances where there is a lack of privity between the parties. In this case, there was direct privity between the parties. They tried to negotiate a rebate contract. Those cases all involved an indirect benefit by virtue of what the result of performing services were or goods. So those cases are distinguishable from this case. The other point I want to make is with respect to both tests, one of the factors that's consistent throughout is that the enrichment has to be unjust. And in here, the facts we submit were clear that there was no unjust enrichment, and that was for three reasons. The first reason was that the rebate was always conditional on money being funded by my client's raw material supplier. That was always a condition to the rebate being paid. And that was not refunded because the volume quantities were not met. The second reason is that there was no income. So that money never came to my client, FIT, which he could pass on to the plaintiff. And that was the whole reason that the arrangement was set up, because it was being funded by that party. The second reason is that when the price was set for the fibers to be sold to the felt supplier, there was no increase in the price to the felt supplier to account for the rebate. There was a separate contract between FIT and the felt supplier to establish the value of those goods. There was no increase in that price in order to account for the rebate. So the fact that my client received these additional sales wasn't unjust at all. All right. I see you're out of time. Any further questions? All right. Thank you. Thank you, gentlemen.  With that, you may adjourn the meeting.